# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

_____

SUNNIE CHAPPELL, individually and
on behalf of others similarly situated,

    Plaintiff,

    v.

INGENIOUS MED, INC.,

    Defendant.
_____)

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
1:17-cv-02444-TWT

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF HER MOTION FOR CONDITIONAL CERTIFICATION
## AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b)
## OF THE FLSA

Ingenious Med, Inc., ("Ingenious Med" or "Defendant") uniformly classified

all of its Tier 1 Product Support Specialists  (also referred to by Defendant as a

"Technical Support Specialist 1") (herein after referred to as "Tier 1 Specialists")

company-wide as exempt from the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201 *et seq*., until it uniformly classified all Tier 1 Specialists company-wide as

non-exempt and began paying them overtime.[1]  Defendant, however, did not pay its

_____

[1] Complaint, [Doc. 1], ¶ 22.

1

Tier 1 Specialists back pay for overtime hours worked prior to its reclassification,[2] nor has it paid its Tier 1 Specialists for all of their overtime hours worked subsequent to its reclassification.[3]   This lawsuit seeks recovery of these unpaid back wages.   Plaintiff hereby moves for conditional certification and issuance of notice.

## STATEMENT OF FACTS

Sunnie Chappell ("Chappell" or "Plaintiff"), a current Tier 1 Specialist at Ingenious Med, brought this action pursuant to the FLSA for unpaid overtime individually and on behalf of the putative class of current or former employees who work or worked for Defendant as a Tier 1 Specialist, or any other position performing substantially similar job duties under a different job title, within the period beginning three years prior to the filing date of the Complaint in this action through the date of judgment (the "relevant period"), who worked any hours over 40 in one or more workweeks during the relevant period without receiving all overtime compensation owed to them required by the FLSA (collectively, the "Similarly Situated Employees").   To date, prior to notice issuing, one additional

---

[2] Complaint, [Doc. 1], ¶¶ 25-26.
[3] *Id.*

Tier 1 Specialist has opted into this case by filing a consent to join form with this Court.[4]

### A.  Affidavits in Support of Conditional Certification

Plaintiff supports this Motion with affidavits from herself as the Named Plaintiff and from opt-in plaintiff Brian Legg, as well as additional witness, former Ingenious Med employee Katie Work, representing her experiences working for Ingenious Med as a Tier 1 Specialist, during the three-year period preceding the filing of the Complaint in this action:

1. Sunnie Chappell worked as a Tier 1 Specialist at Defendant's Atlanta, Georgia office, during the period of time beginning three years prior to the filing date of the Complaint in this case and continuing through the present.[5]

2. Brian Legg worked as a Tier 1 Specialist at Defendant's Atlanta, Georgia office, during the period of time beginning three years prior to the filing date of the Complaint in this case and continuing through October, 2017.[6]

3. Katie Work worked as a Tier 1 Specialist at Defendant's Atlanta, Georgia office, during the period of time beginning three years prior to the filing date of the Complaint in this case and continuing through March, 2016.[7]

### B.  Ingenious Med's Uniform Payroll and Personnel Policies

### I.  Ingenious Med's Uniform Pay Policy Applies to All Tier 1 Specialists.

---

[4] Brian Legg [Doc. 4].
[5] Declaration of Sunnie Chappell ("Chappell Decl."), Exhibit A, ¶ 2.
[6] Declaration of Brian Legg ("Legg Decl."), Exhibit B, ¶ 2.
[7] Declaration of Katie Work ("Work Decl."), Exhibit C, ¶ 2.

Prior to approximately December 1, 2016, on a company-wide basis, Ingenious Med internally classified all of its Tier 1 Specialists as exempt from the FLSA's overtime provisions.[8]  As a result of this misclassification, Ingenious Med did not pay its Tier 1 Specialists any overtime premiums when they worked more than forty (40) hours in a workweek.[9]  The Tier 1 Specialists were classified as salaried, exempt employees.[10]  Indeed, Ingenious Med does not deny that all of its Tier 1 Specialists were classified as exempt from the FLSA's overtime provisions and are or were therefore not paid an overtime premiums of time and a half their regular rate for certain hours worked over forty (40) in a work week before approximately December 1, 2016.[11]

In approximately November 2016, Ingenious Med announced to its Tier 1 Specialists that it was reclassifying their position from exempt to non-exempt and overtime-eligible beginning December 1, 2016.[12]  In fact, Ingenious Med admits that there was a company-wide decision announced in or about November 2016 to

---

[8] Chappell Decl., Exhibit A, ¶ 3; Legg Decl., Exhibit B, ¶ 3; Work Decl., Exhibit C, ¶ 3.
[9] *Id*.
[10] *Id*.
[11] Answer [Doc. 5], ¶ 26-27.
[12] Chappell Decl., Exhibit A, ¶ 3; Legg Decl., Exhibit B, ¶ 3; Work Decl., Exhibit C, ¶ 3.

reclassify the Tier 1 Specialists.[13] On or about December 1, 2016, Ingenious Med, again on a company-wide basis, reclassified all of its Tier 1 Specialists to non-exempt positions and began paying them overtime pay for some, but not all, hours worked over forty (40) in a workweek.[14]  Upon reclassification, there was no material difference in the job duties and responsibilities performed by the Tier 1 Specialists.[15]

Ingenious Med's Wage and Hour Polices, which are applicable to the Tier 1 Specialist position and attached hereto as Exhibit D, provide that "all non-exempt employees are required to clock in and out daily utilizing the UltiPro system. . . . Non-exempt employees are paid for every hour worked. Non-exempt employees who work more than 40 hours in a week are considered to have worked overtime. The company recognizes the week as Sunday through Saturday. No overtime is permitted unless approved in advance by your Manager. Employees who are required to attend meetings are paid for the hours spent in the meeting. Employees who use PTO during a workweek will not be paid overtime until more than 40

---

[13] Answer, [Doc. 5], ¶ 24.
[14] Chappell Decl., Exhibit A, ¶ 3; Legg Decl., Exhibit B, ¶ 3; Work Decl., Exhibit C, ¶ 3.
[15] *Id.*

hours are actually worked. PTO hours are not considered time worked."[16] Tier 1 Product Support Specialists do not have the discretion to deviate from these company policies.[17]

Ingenious Med's payroll policy decisions are made by its corporate office, and Tier 1 Specialists are not permitted to deviate from these payroll policies.[18] Thus, according to Ingenious Med's uniform pay policies for Tier 1 Specialists, as determined by its corporate office, prior to December 1, 2016 and after that date, Ingenious Med failed to compensate all Tier 1 Specialists for overtime hours worked at time and a half their regular hourly rate.[19]

All current and former Tier 1 Specialists testified that, prior to the reclassification of all Tier 1 Specialists as non-exempt, on one or more occasions they worked over forty (40) hours in a workweek, and/or observed other Tier 1 Specialists working over forty (40) hours in a workweek.[20]  And all affiants who work or worked as Tier 1 Specialists testified that, prior to and after the

---

[16] *Id.* at ¶ 6; Ingenious Med Wage and Hour Polices, January 2017, Exhibit D at p. 2.
[17] Chappell Decl., Exhibit A, ¶ 6; Legg Decl., Exhibit B, ¶ 6; Work Decl., Exhibit C, ¶ 6.
[18] Chappell Decl., Exhibit A, ¶ 14; Legg Decl., Exhibit B, ¶ 14; Work Decl., Exhibit C, ¶ 14.
[19] Chappell Decl., Exhibit A, ¶ 15; Legg Decl., Exhibit B, ¶ 15; Work Decl., Exhibit C, ¶ 15.
[20] *Id.*

reclassification, when they worked over forty (40) hours in a workweek as a Tier 1 Specialist, they were not paid all overtime premiums owed for their hours worked over forty (40).[21]

## II. Ingenious Med's Tier 1 Specialists Are and Were Uniformly Subject to the Same Personnel Polices and Job Duties.

Ingenious Med required each Tier 1 Specialist to undergo extensive training at the onset of their employment.[22]  During and subsequent to their training, all Tier 1 Specialists are given and required to follow manuals, instructions, and polices on how to perform the primary functions of that position.[23]  All affiants have testified that Tier 1 Specialists are not permitted to deviate from these manuals, instructions, and/or polices, nor are they permitted to deviate from other company polices applicable to their position as Tier 1 Specialists, such as Defendant's Code of Conduct, its compensation policies, and/or its benefits polices.[24]

---

[21] *Id*.
[22] Chappell Decl., Exhibit A, ¶ 13; Legg Decl., Exhibit B, ¶ 13; Work Decl., Exhibit C, ¶ 13.
[23] *Id*. at ¶ 13 and ¶ 14.
[24] *Id*.

The witnesses further testified that, based on their personal knowledge, experiences, and discussions with other Tier 1 Specialists, all Tier 1 Specialists' job duties and responsibilities are materially the same.[25]

The Tier 1 Specialist position is also not subject to any potential exemption defense that Ingenious Med attempted to raise in its Answer.[26]   First all affiants testified that it was not the primary duty of a Tier 1 Specialist to make any hiring or firing decisions of Ingenious Med's employees.[27]   Further, Tier 1 Specialists were not evaluated on whether they were involved in the hiring or firing process.[28] Ingenious Med and its managers considered a Tier 1 Specialist to have fulfilled his or her primary duties where they satisfied all required customer service and other job duties and responsibilities, regardless of whether they have had any involvement in hiring or firing.[29]

Additionally, the Director of Support and/or the Manager of Support are responsible for making all major department decisions that are not otherwise made

---

[25] *Id.* at ¶ 5.

[26] *See* Answer [Doc. 5, Affirmative Defenses 23 - 25].  To date, Defendant has still not informed Plaintiff which exemption defense(s) of the dozens available it is claiming in this action, which is, in part, the subject of Plaintiff's Motion to Strike Affirmative Defenses currently before this Court [Doc. 13].

[27] Chappell Decl., Exhibit A, ¶ 12; Legg Decl., Exhibit B, ¶ 12; Work Decl., Exhibit C, ¶ 12.

[28] *Id.*

[29] *Id.*

at the corporate level.[30]  By way of non-exhaustive example, Ingenious Med and its Director of Support and Manager of Support are responsible for determining the number of labor hours and shifts, including on-call shifts, that Tier 1 Specialists work each week,[31] and third-party vendor approval decisions are made by the Director of Support and the Product Support Operations Analyst, not Tier 1 Specialists.[32]  Moreover, the Director of Support, the Manager of Support, and/or the Product Support Operations Analyst interview each applicant for hire, subject to final approval by the corporate Human Resources department.[33]  When promotions are available, the company internally posts the positions and the Director of Support and/or the Manager of Support conduct the interviews and makes the promotional decisions.[34]

All affiants also testified that, based on their personal knowledge and experience, it was not the primary duty of a Tier 1 Specialist to perform office work directly related to the management or general business operations of Ingenious Med or its customers.[35]  For example, the Director of Support, not a Tier 1 Specialist, presents budget proposals and requests for new employees to

---

[30] *Id*. at ¶ 9 and 11.
[31] *Id*. at ¶ 10.
[32] *Id*. at ¶ 11.
[33] *Id*.
[34] *Id*.
[35] *Id*. at ¶ 13.

Ingenious Med's Chief Operating Officer ("COO") for approval and denial.[36] Indeed, Tier 1 Specialists perform the primary duties of their job by undergoing training and referring to manuals, instructions, and/or polices on how to properly perform the primary duties of the position and are not permitted to deviate from these manuals, instructions, and/or polices.[37]   Moreover, the Tier 1 Specialist position is the lowest ranking position in the support department, with at least five, possibly six, of the following positions ranking above Tier 1 Specialists: Tier 2 Product Support Specialist; Customer Success Analyst (formerly Strategic Account Analyst); Strategic Account Analyst Manager; Product Support Operations Analyst; Manager of Support; and the Director of Support.[38]

In addition to their Monday through Friday 8-hour work shifts, all Tier 1 Specialists company-wide are and were also required to work varying and rotating 24-hour on-call shifts.[39] Prior to the reclassification in December, 2016, the Tier 1 Specialists were not, however, paid any overtime premiums for any of their hours spent on-call; Tier 1 Specialists were instead paid a fixed sum "shift bonus" in addition to their salary for work performed while on-call.[40] Even after the

---

[36] *Id.*
[37] *Id.*
[38] *Id.* at ¶ 8.
[39] *Id.* at ¶ 4.
[40] *Id.*

reclassification of the Tier 1 Specialist position from exempt to non-exempt, Tier 1 Specialists have not been paid overtime premiums for all hours spent on-call.[41]

Indeed, while on-call, all Tier 1 Specialists are required to answer a page/call within 5 minutes. While working on-call, Tier 1 Specialists are required to have a laptop, a cell phone, and internet access *at all times*.[42]  Based on their own personal experiences and through discussions with other Tier 1 Specialists, all witnesses have testified that all Tier 1 Specialists company-wide were and are extraordinarily limited, if not outright prohibited, from engaging in personal and social activities while on-call and therefore are unable to effectively use time spent during their 24-hour on-call shifts when not responding to a page/call for their own purposes.[43]  All affiants further testified that they have personally and routinely been unable to, for example, go grocery shopping, go out to dinner, or attend parties, concerts, or sporting events while on-call as a Tier 1 Specialist and have also routinely been interrupted in performing basic life functions, such as eating, sleeping, and showering while on-call as a Tier 1 Specialist.[44]

Opt-in plaintiff Brian Legg further testified that Tier 1 Specialists were informed in a meeting that they were not permitted to engage in *any* activities that

---

[41] *Id*.

[42] *Id*. at ¶ 5.

[43] *Id*.

[44] *Id*.

would cause noise in the background while on a call during their on-call shifts.[45] Legg attested that this direction was precipitated by a customer complaining to his supervisor that they heard water running in the background during one of his on-call shift calls on a Saturday morning.[46]

### C.   The Potential Plaintiffs are Similarly Situated

The company-wide policy stated in Ingenious Med's Wage and Hour polices for the relevant period, as well as the foregoing declarations, consistently establish that Ingenious Med paid and continues to pay Tier 1 Specialists according to a uniform, company-wide pay policy that Plaintiff alleges to have violated the FLSA, not only before Ingenious Med reclassified the Tier 1 Specialist position to non-exempt in December, 2016, but also after December, 2016, where Tier 1 Specialists are still not paid for all overtime hours worked.  The testimony shows that these potential plaintiffs are therefore sufficiently similar as to satisfy the "similarly situated" requirement at the Notice stage because all Tier 1 Specialists are and were, during the preceding three years and continuing through the present, affected by the same company-wide pay policy, and are also similarly situated as to their job duties, responsibilities, and training.

---

[45] Legg Decl., Exhibit B, at ¶ 5.
[46] *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

I.   **THIS COURT SHOULD CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND ORDER ISSUANCE OF NOTICE.**

A.   Plaintiff Satisfies the Lenient "Similarly Situated" Requirement.

The FLSA expressly authorizes an action for unpaid overtime by "one or more employees for and in behalf of himself or themselves and other employees *similarly situated.*"[47]   Plaintiff filed her overtime claim as a Section 216(b) collective action on behalf of herself and others similarly situated, and filed her Opt-In Consent to join such a collective action with her Complaint.[48]   One additional Tier 1 Specialist (out of a putative class of approximately 15 individuals)[49] has since filed an Opt-In Consent to join this lawsuit as a collective action.   Here, Plaintiff, an opt-in plaintiff, and an additional witness have all testified to a policy and practice of FLSA violations applicable to Tier 1 Specialists, together corroborating Plaintiff's allegations that all Tier 1 Specialists

---

[47] 29 U.S.C. § 216(b) (*emphasis added*).   FLSA collective actions differ from Fed. R. Civ. P. 23 class actions in that, under Section 216(b), a person who wishes to join the collective action must affirmatively "opt-in" by filing written consent with the court, whereas under Fed. R. Civ. P. 23 a person must affirmatively "opt-out" in order to abstain from the representative class.   29 U.S.C. § 216(b); *see also Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

[48] Complaint, [Doc. 1], ¶ 1; Plaintiff's Opt-In Consent [Doc. 1-1].

[49] The size of the putative class may either increase or decrease as the parties continue to engage in discovery.

perform/performed the same job duties and suffer/suffered the same FLSA violations.[50]

This Court has the discretion to authorize Plaintiff to give notice to potential similarly-situated class members. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Olmstead v. RDJE, Inc.*, 3:16-CV-198-TWT, 2017 U.S. Dist. LEXIS 140241, at *2, (N.D. Ga. Aug. 30, 2017) (Thrash, J.).   In *Hoffman-La Roche*, the Supreme Court acknowledged that "court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of this action." *Id.* at 172.   "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources . . . [and the] judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Id.* at 170.   Prompt notice to potential class members is crucial to this efficient resolution of multiple claims because the statute of limitations for such class members' claims is not tolled until they file their individual opt-in consents. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996) (holding statute of limitations is not tolled as to potential class members by the filing of a complaint for 216(b) collective action).   If the FLSA limitations

---

[50]Chappell Decl., Exhibit A; Legg Decl., Exhibit B; Work Decl., Exhibit C.

period expires before that opt-in consent is filed, the prospective claimant's claim will be time-barred. Notice therefore promotes the remedial purpose of Section 216(b) by reducing the risk that valid claims will be lost due to the claimant's ignorance of his right to join a pending collective action.

Courts in the Eleventh Circuit have employed a two-stage analysis in evaluating the appropriateness of class certification under Section 216(b). *Morgan v. Family Dollar, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008). Stage one arises when, as here, a plaintiff moves for conditional class certification prior to extensive discovery,[51] and stage two arises if a defendant moves for decertification after discovery. *Id.* In a stage one proceeding (the "notice stage"), a plaintiff must simply show that similarly situated employees exist and would be interested in joining the lawsuit. *Hipp*, 252 F.3d at 1216-17; *see also Olmstead*, 2017 U.S. Dist. LEXIS 140241, at *10 (determining that there is no "magic number of plaintiffs that will show enough interest.") (Thrash, J.)[52]   The class certification

---

[51] Plaintiff has not received substantial document production from Defendant regarding the facts, defenses, and merits of this action as of the date of this motion. There also have been no depositions taken to date. Thus, this Motion falls squarely within the "stage one" or "notice stage" analysis under the Eleventh Circuit's decision in *Hipp*.

[52] This "showing of interest" requirement could potentially place FLSA plaintiffs in a "chicken and the egg" limbo situation. *Cf., Detho v. Bilal*, 2008 WL 2962821, at *3 (S.D. Tex. Jul. 29, 2008) ("Requiring an FLSA plaintiff who does not know the identities of the members of the proposed class to provide information about

determination at the notice stage is made using a fairly lenient standard, *see Morgan*, 551 F.3d at 1260-61, based primarily on the pleadings and any affidavits which have been submitted. *Hipp*, 252 F.2d at 1218.   The notice stage typically results in "conditional certification" of a class.   *Id.*

At the notice stage, Plaintiff need only show that her "position[ is]similar, not identical, to the positions held by the putative class members." *Id.* at 1217 (quoting *Grayson,* 79 F.3d at 1096).   "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* at 1219 (quoting *Grayson*, 79 F.3d at 1097).   Thus, courts have found plaintiffs to be "similarly situated" where the plaintiffs performed the same or similar tasks, under the same or similar conditions, and were compensated in the same or a similar manner.   *See, e.g.,*

---

class members' desire to opt in could require the plaintiff to produce the very information that she sought to obtain through conditional certification and notice.").   Given the likely small class size, and as evidenced by the affidavits supporting this Motion, Plaintiff has more than satisfied the Eleventh Circuit's "showing of interest" requirement.   *See Riddle v. Suntrust Bank*, 2009 WL 3148768 (N.D. Ga. 2009) (finding that because actual notice has not been sent to putative class members who may be spread over a wide geographic area, the existence of only three opt-in plaintiffs sufficiently demonstrated an interest by other employees to opt-in to the suit); *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218, 1232 n. 20 (S.D. Ala. 2009).

*Champneys v. Ferguson Enters., Inc.*, 2003 WL 1562219, at *6 (S.D. Ind., Mar. 11, 2003).

Alternatively, evidence tending to show "centralized control" of the circumstances giving rise to the FLSA violations at issue is sufficient to meet this lenient burden at the notice stage. *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (*citing Vaslavik v. Storage Tech. Corp.*, (D. Colo. 1997)); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (holding burden met at notice stage by "making a modest factual showing sufficient to demonstrate that they and potential class members together were victims of a common policy or plan that violated the law"). Of course, Plaintiff at the notice stage is not required to prove the existence of a common policy affecting all similarly situated employees because it precedes substantive discovery. "[A] unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Hipp,* 252 F.3d at 1219 (quoting *Grayson,* 79 F.3d at 1095). Plaintiff need only "make some rudimentary showing of commonality between the basis for the claim and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Scott,* 2006 WL 1209813, at *2 (quoting *Marsh v. Butler County Sch. Sys.,* 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003)). Not all questions of law or

fact must be common; rather, it is enough if some questions of law or fact are common to all parties, even if such questions do not predominate. *See Grayson*, 79 F.3d at 1096 (quoting *Flavel v. Svedala Indus. Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994)) ("The 'similarly situated' requirement, in turn, is considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate,' or presumably, the Rule 20(a) requirement that claims 'arise out of the same action or occurrence.'").

At the initial notice stage, the district court does not determine the merits of Plaintiff's claims or Defendant's purported defenses. *Olmstead*, 2017 U.S. Dist. LEXIS 140241, at n.13 (noting that Defendant's "argument goes to the merits of the case, which are not addressed at the conditional certification stage."); *Kreher v. City of Atlanta, Ga.*, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006) ("[A] court adjudicating a motion to authorize a collective action need not evaluate the merits of plaintiffs' claims in order to determine whether a similarly situated group exists."); *see also Scott v. Heartland Home Finance, Inc.*, 2006 WL 1209813, at *3 (N.D. Ga., May 3, 2006) (court's function at the notice stage is not to make a determination whether plaintiffs' case is meritorious). The district court also does not consider factual differences regarding working hours, variations in job duties, or even job locations at this initial notice stage. *Scott*, 2006 WL 1209813, at *9

(*citing Pendelbury v. Starbucks Coffee Co.*, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005)) (holding consideration of factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); *Moss v. Crawford Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("[V]ariations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objectives of a 216(b) action."). For purposes of this Motion, the Court resolves all fact questions and credibility issues in favor of the moving party. *Severtson v. Phillips Beverage Co.,* 141 F.R.D 276, 279 (D. Minn. 1992).

This Court's opinion in *Olmstead* is particularly instructive. In *Olmstead*, the Court correctly followed the two-stage process and conditionally certified a 216(b) collective action where the plaintiff alleged a group of employees were not paid any overtime for certain time before arriving at the defendant's worksite. *See Olmstead*, 2017 U.S. Dist. LEXIS 140241, at. *2-4. In granting the plaintiff's motion for conditional certification, this Court determined that the plaintiff had sufficiently met his burden at this lenient stage by showing that "members of the proposed class all shared the same position or were subject to the same policy" and were therefore similarly situated. *Id*. at *3-4. Recognizing that the putative class size was likely not a large one, as the defendant only operated in two states, this

Court determined that Olmstead had demonstrated sufficient interest by other employees where there were only four (4) opt-in plaintiffs and two affidavits supporting the motion. Here, Plaintiff has provided three (3) affidavits, including her own, in support of her motion, and while there is currently only one opt-in plaintiff, the putative class size in this case is likely significantly smaller than that in *Olmstead*.

Indeed, as in *Olmstead*, Plaintiff here has met and exceeded her burden at this initial notice stage.  Specifically, Plaintiff has shown that the similarly situated Tier 1 Specialists were (i) all internally classified by Defendant as exempt under the FLSA until in or about December, 2016 when they were all reclassified; (ii) similarly situated as to job activities and compensation arrangements; (iii) the victims of a common plan or policy; and (iv) that other employees within the class of similarly situated Tier 1 Specialists have subsequently filed an Opt-In Consent to join this lawsuit, or have expressed their interest in or are known to be or know others to be interested in joining this overtime lawsuit.[53]

Given Defendant's uniform classification and reclassification of its Tier 1 Specialists, as well as Plaintiff's evidence of their common job duties,

---

[53] Chappell Decl., Exhibit A, ¶ 16; Legg Decl., Exhibit B, ¶ 16; Work Decl., Exhibit C, ¶ 16.

compensation plans, and performance of unpaid overtime work, this case should be conditionally certified.

### B.   Courts Generally Grant Notice in Similar Cases

Courts routinely grant conditional certification under Section 216(b) of the FLSA in cases where plaintiffs argue that they have been denied overtime compensation due to the employer's common decision to misclassify them as overtime-ineligible, including this Court in *Olmstead*, 2017 U.S. Dist. LEXIS 140241.[54]

---

[54] *See also Lytle v. Lowe's Home Centers, Inc.*, 2014 WL 103463 (M.D. Fla. Jan. 10, 2014) (granting plaintiff's motion for conditional certification where plaintiff asserted defendant misclassified store HR Managers as exempt); *Bradford v. CVS Pharmacy, Inc.*, 2013 WL 425060, at *3-4 (N.D. Ga. Feb. 4, 2013) (granting plaintiffs' motion for conditional certification where they alleged managers were subject to the same unlawful policy when defendant misclassified them as exempt); *Billingsley v. Citi Trends, Inc.*, 2013 WL 246115, at *4 (N.D. Ala. Jan. 23, 2013) (finding that plaintiffs' allegations and supporting declarations were sufficient to support a grant of their motion for conditional certification for store managers at defendant's retail stores); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184 (S.D. Ohio 2012) (certifying as a class action a putative class of mortgage loan officers who were misclassified as exempt from overtime pay requirements and noting the frequency with which courts "certify misclassification cases with similar common questions because the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class."); *Heldman v. King Pharmaceuticals, Inc.*, 2011 WL 465764 (M.D. Tenn. Feb. 2, 2011) (conditionally certifying nationwide class of all sales representatives based on uniform exemption classification despite defendant's evidence that "hospital representatives" had different job duties than "retail representatives," where employer made company-wide exemption determination inclusive of both positions); *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217-18 (E.D.

Similarly, courts grant motions for conditional certification where the plaintiffs submit evidence that they performed similar job duties and evidence that the employer uniformly and simultaneously reclassified them from exempt to non-exempt.  *See, e.g., Struck v. PNC Bank N.A.*, 2013 WL 571849, at *4 (S.D. Ohio Feb. 13, 2013) (acknowledging that defendant's "decision to reclassify its [mortgage loan officers] is not an admission of any previous misclassification[,]" but finding that "the fact that Defendants chose to reclassify MLOs as a group implies that its MLOs as a whole, perform similar duties.") (internal citation and quotation marks omitted); *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 322 (S.D.N.Y. 2011) ("While [reclassification] alone is insufficient to justify

---

Mich. 2010) (conditionally certifying class of all managers despite different job titles and job duties because employer classified all managers as exempt prior to reclassification to non-exempt, despite defendant's argument that manager title encompassed six different positions); *Perkins v. Southern New England Tel. Co.,* 669 F. Supp. 2d 212, 225 (D. Conn. 2009) (granting plaintiffs' motion for conditional certification on their FLSA claim and their Motion for Rule 23(b)(3) Class Certification on their state law claim and finding that "despite some dissimilarities, the potential class members performed similar non-exempt duties, and exercised similar amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification"); *Simpkins v. Pulte Home Corp.*, 2008 WL 3927275 (M.D. Fla. Aug. 21, 2008) (conditionally certifying company-wide class based on affidavits from five states because "[m]ost importantly, [defendant] classified all superintendents as being exempt from overtime compensation under the same five FLSA exemptions. . . . Thus, [defendant]'s own management has determined that these employees are similar enough to be classified under the same exemptions for purposes of complying with the FLSA.").

conditional certification, the evidence to this effect does lend support to conditional certification in so far as it supports that Defendants treated Plaintiffs and potential opt-in plaintiffs with uniform pay and employment-related policies."), *abrogated on other grounds by Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013); *Petersen v. Marsh USA, Inc.*, 2010 WL 5423734, at*5 (N.D. Ill. Dec. 23, 2010) (reclassification "provides some evidence of a common policy affecting plaintiffs and putative notice recipients."); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) ("A common policy or plan appears to exist because . . . [plaintiffs] were uniformly reclassified as non-exempt employees, making them eligible for overtime payments.").

Defendant's uniform classification and reclassification of the Tier 1 Specialist position from exempt to non-exempt and its continued uniform practice of failing to pay Plaintiff and those similarly situated for all hours worked over forty (40) in a workweek is evidence supporting this Motion which, when combined with Plaintiff's allegations in her Complaint and the attached declarations regarding Tier 1 Specialists' similar job duties and compensation, sufficiently establishes the lenient standard for conditional certification at this initial stage.

## II.  THE COURT SHOULD ORDER ISSUANCE OF NOTICE AND PRODUCTION OF OPT-IN CONTACT INFORMATION.

Plaintiff submits herewith a proposed Order, proposed Notice of Rights and Proposed Opt-In Consent form.  For the purpose of identifying and notifying potential class members, Plaintiff seeks an Order requiring Defendant to produce putative class contact information, including names, last known addresses, last known phone numbers, personal email addresses (as known or as becomes known to Defendant),[55] including all dates of employment as a Tier 1 Specialist, or any other position performing substantially similar job duties under a different job title. Accordingly, the Court should order Ingenious Med to produce the following within fifteen (15) days of its Order:

> A list, in electronic and importable format, of all persons employed by Defendant during the three years prior to the Court's order who are or were Tier 1 Specialists, including their names, last known addresses, last known personal email addresses, last known telephone number(s), job title(s), dates of employment in the Tier 1 Specialist position, or any other position performing substantially similar job duties under a different job title, and each job title held with Defendant.

Plaintiff further requests that the Court permit Plaintiff to send the court-approved Notice via first-class mail and email to all putative plaintiffs who were Tier 1 Specialists during the relevant period, with a ninety (90) day opt-in period

---

[55] To date, Ingenious has provided email addresses for some, but not all, of the putative class members in its responses to Plaintiff's First Interrogatories.

and to additionally send a reminder notice to the putative plaintiffs forty-five (45) days after Notice has issued.

## CONCLUSION

Plaintiff respectfully requests that the Court enter the proposed Order attached hereto, granting conditional certification of a collective action and approving issuance of the proposed notice and consent forms to the putative class of opt-in plaintiffs.

Respectfully submitted this 2nd day of February, 2018.

*/s/ Jerilyn E. Gardner*
Marcus G. Keegan
Georgia Bar. No. 410424
Jerilyn E. Gardner
Georgia Bar No. 139779
2987 Clairmont Road NE, Suite 225
Atlanta, Georgia 30329
Telephone: (404) 842-0333
Fax: (404) 920-8540
mkeegan@keeganfirm.com
jgardner@keeganfirm.com

*Attorneys for Plaintiff*

## <u>CERTIFICATION</u>

Pursuant to N.D. Ga. L.R. 7.1(D), counsel for Plaintiff hereby certifies that this document has been prepared with Times New Roman (14 point) font, which font has been approved under L.R. 5.1(C).

*/s/ Jerilyn E. Gardner*
Jerilyn E. Gardner

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____
                                                    )
SUNNIE CHAPPELL, individually and      )
on behalf of others similarly situated,       )
                                                    )
      Plaintiff,                                  )
                                                    )          CIVIL ACTION NO.
      v.                                              )          1:17-cv-02444-TWT
                                                    )
INGENIOUS MED, INC.,                        )
                                                    )
      Defendant.                               )
_____)

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 2nd day of February, 2018 a true

and correct copy of the foregoing was filed electronically with the Clerk of Court

using the CM/ECF system, which will automatically send email notification to the

following attorneys participating in the CM/ECF system for this civil action:

| SHERIN AND LODGEN LLP | The Maxim Law Firm, P.C. |
|---|---|
| Matthew C. Moschella | Kevin A. Maxim |
| David A. Michel | 1718 Peachtree Street, NW |
| 101 Federal Street | Suite 599 |
| Boston, Massachusetts 02110 | Atlanta, GA 30309 |
| mcmoschella@sherin.com | kmaxim@maximlawfirm.com |
| damichel@sherin.com | |

                                    */s/ Jerilyn E. Gardner*
                                      Jerilyn E. Gardner