**EXHIBIT 1**

**(Proposed Agreement)**

## SETTLEMENT AGREEMENT

### Parties

This SETTLEMENT AGREEMENT is by and between (i) **SUNNIE CHAPPELL**, **BRIAN LEGG** (together with Ms. Chappell, "Employees") and (ii) **INGENIOUS MED, INC.** ("Ingenious Med") (collectively, the Employees and Ingenious Med shall be hereinafter be referred to as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences and causes of actions raised by the Employees.

### Recitals

A.      WHEREAS, Ms. Chappell commenced employment with Ingenious Med on or about May 11, 2015 as a Tier I Product Support Specialist.

B.      WHEREAS, Mr. Legg commenced employment with Ingenious Med on or about April 18, 2016 as a Tier I Product Support Specialist and was employed in that role with Ingenious Med through October 31, 2016.

C.      WHEREAS, prior to December 1, 2016, the Employees were classified as exempt from the overtime requirements of the Fair Labor Standard Act (the "FLSA").

D.      WHEREAS, effective December 1, 2016 – in anticipation of a regulatory change – Ingenious Med reclassified the Employees as non-exempt under the FLSA.

E.      WHEREAS, on or about June 29, 2017, Ms. Chappell filed a Complaint on behalf of herself and on behalf of others similarly situated in the United States District Court for the Northern District of Georgia Atlanta Division, entitled Sunnie Chappell v. Ingenious Med, Inc., Civil Action No. 1:17-cv-02444-TWT (the "Action") alleging individual and collective claims under the FLSA. Mr. Legg later opted in to the Action. In the Action, each Employee alleged

and sought as damages: (i) alleged unpaid overtime worked ancillary to their shifts prior to the reclassification on December 1, 2016; (ii) alleged unpaid wages for time worked during on-call shifts prior to the reclassification on December 1, 2016, for time that the Employees claim they were allegedly engaged to wait; and (iii) alleged unpaid wages for time allegedly worked during on-call shifts after the reclassification on December 1, 2016, for time that the Employees claim they were allegedly engaged to wait.

F.     WHEREAS, Ms. Chappell served the Complaint on Ingenious Med on September 25, 2017.

G.     WHEREAS, on September 29, 2017 Ingenious Med filed an Answer denying all liability.

H.     WHEREAS, Ingenious Med disputed, and continues to dispute, all of the Employees' allegations, denies that it has committed any wrongdoing or violated the FLSA.

I.     WHEREAS, to avoid the uncertainty, burdens, and expense of further litigation, on June 11, 2018, the Parties resolved to settle and finally resolve all claims arising out of the Action from the beginning of the world through the date of this Agreement.

J.     WHEREAS, the Parties have engaged in arms-length negotiations – including a lengthy mediation session with a neutral mediator – during which they were each represented by counsel of their choosing – that led to the Parties' agreement on the terms contained herein.

K.     WHEREAS, the Parties, through their counsel, have conducted a thorough investigation into the facts relevant to the Action and, having diligently investigated the allegations contained in the Action, believe that the settlement between the Parties is fair, reasonable, adequate, and in the best interests of all Parties in light of all known facts and circumstances, including the considerable expense of discovery and litigation, defenses

-10-

asserted by the Parties, uncertainty of the result through continued litigation and appeal, and the risks of delay and an adverse judgment.

## 1. **Terms**

**NOW THEREFORE, IN CONSIDERATION** of the foregoing, and for good and valuable consideration, including the mutual exchange of promises herein, the receipt and sufficiency of which are hereby acknowledged and shall be conclusively presumed, the Parties agree as follows:

1.1     The Parties agree that this Settlement Agreement is conditional upon approval of the Court in the Action, and the Parties agree to act cooperatively to expedite approval of the Agreement and to file all necessary submissions to obtain such approval including, but not limited to, a Joint Motion for (A) Approval of Fair Labor Standards Act Settlement Agreement and (B) to Dismiss this Action with Prejudice (the "Joint Motion"). All Parties expressly acknowledge and agree that, unless and until the Court enters on the Docket an Order allowing the Joint Motion, no provision of this Settlement Agreement shall be valid or binding on any Party and, in the event that the Court declines to allow the Joint Motion, no Party shall have any rights or obligations under this Settlement Agreement and it shall be null and void in its entirety.

1.2     Within ten business days of the date that the Court enters on the Docket an Order granting the Joint Motion, counsel for Ingenious Med shall deliver payment (the "Chappell Settlement Payment") to counsel for Ms. Chappell, on her behalf, as follows:

(i)     $20,000 in back pay reported via IRS Form W-2;

(ii)    $20,000 as liquidated damages paid without tax deductions and reported via IRS form 1099; and

(iii)   $23,333 to Ms. Chappell's attorneys as attorneys' fees and $525 as expenses of litigation upon submission of IRS Form W-9 by such attorneys.

The Chappell Settlement Payment shall compensate Ms. Chappell for all alleged unpaid overtime worked ancillary to her shift prior to the reclassification on December 1, 2016 and for alleged unpaid wages for time worked during on-call shifts prior to the reclassification on December 1, 2016 for time that Ms. Chappell was allegedly engaged to wait.  No portion of the Chappell Settlement Payment, however, shall be for any alleged unpaid wages for time allegedly worked while on-call after the reclassification on December 1, 2016 for time that Ms. Chappell claims she was allegedly engaged to wait, and Ingenious Med shall pay no amounts to Ms. Chappell for such alleged on-call time.  Ms. Chappell acknowledges and agrees that the total collective sum of $40,000.00 is a fair and accurate representation of all of her alleged damages, that upon receipt of the Chappell Settlement Payment she will have been paid in full for all amounts allegedly owed to her by Ingenious Med, and that she is not entitled to any additional sums from Ingenious Med for the alleged overtime and alleged unpaid wages worked as of the date of the execution of the agreement.

      1.3    Within ten business days of the date that the Court enters on the Docket an Order granting the Joint Motion, counsel for Ingenious Med shall deliver payment (the "Legg Settlement Payment") to counsel for Mr. Legg, on his behalf, as follows:

      (i)    $10,000 in back pay reported via IRS Form W-2;

      (ii)    $10,000 as liquidated damages paid without tax deductions and reported via IRS form 1099; and

      (iii)    $11,667 to Mr. Legg's attorneys as attorneys' fees and expenses of litigation upon submission of IRS Form W-9 by such attorneys.

The Legg Settlement Payment shall compensate Mr. Legg for all alleged unpaid overtime worked ancillary to his shift prior to the reclassification on December 1, 2016 and for alleged unpaid wages for time worked during on-call shifts prior to the reclassification on December 1,

2016 for time that Mr. Legg was allegedly engaged to wait.  No portion of the Legg Settlement Payment, however, shall be for any alleged unpaid wages for time allegedly worked while on-call after the reclassification on December 1, 2016 for time that Mr. Legg claims he was allegedly engaged to wait, and Ingenious Med shall pay no amounts to Mr. Legg for such alleged on-call time.  Mr. Legg acknowledges and agrees that the total collective sum of $20,000.00 is a fair and accurate representation of all of his alleged damages, that upon receipt of the Legg Settlement Payment he will have been paid in full for all amounts allegedly owed to him by Ingenious Med, and that he is not entitled to any additional sums from Ingenious Med for the alleged overtime and alleged unpaid wages worked as of the date of the execution of the agreement.

      1.4     Simultaneous with the execution and delivery of this Settlement Agreement, Ms. Chappell shall deliver an original fully executed Release in the form attached as Exhibit A (the "Chappell Release").  Counsel for Ms. Chappell shall hold the Chappell Release in escrow and, within five business days of receiving the Chappell Settlement Payment, shall forward the Chappell Release to counsel for Ingenious Med.

      1.5     Simultaneous with the execution and delivery of this Settlement Agreement, Mr. Legg shall deliver an original fully executed Release in the form attached as Exhibit B (the "Legg Release").  Counsel for Mr. Legg shall hold the Legg Release in escrow and, within five business days of receiving the Legg Settlement Payment, shall forward the Legg Release to counsel for Ingenious Med.

      1.6     Ms. Chappell expressly acknowledges and agrees that upon execution of the settlement agreement, she will have been paid in full for all wages, overtime, and salary due and owing from Ingenious Med, through the last paycheck she received prior to executing the

agreement. Ms. Chappell acknowledges and agrees that upon receipt of the Chappell Settlement Payment she will not be owed, and other than the sum paid in accordance with this Settlement Agreement will not receive, any other payments or compensation from Ingenious Med related to the claims raised in the Complaint, and is releasing and waiving any claims to any other payments or compensation to which she may otherwise have been entitled to had she not signed this Settlement Agreement.

    1.7    Mr. Legg expressly acknowledges and agrees that upon execution of the settlement agreement, he will have been paid in full for all wages, overtime, and salary due and owing from Ingenious Med, through the last paycheck he received prior to executing the agreement. Mr. Legg acknowledges and agrees that upon receipt of the Legg Settlement Payment he will not be owed, and other than the sum paid in accordance with this Settlement Agreement will not receive, any other payments or compensation from Ingenious Med related to the claims raised in the Complaint, and is releasing and waiving any claims to any other payments or compensation to which he may otherwise have been entitled to had he not signed this Settlement Agreement.

    1.8    This Settlement Agreement does not constitute an admission by Ingenious Med that it has any obligations to either of the Employees other than those set forth in this Settlement Agreement and is not an admission that Ingenious Med violated any federal, state, and/or local law, provision, constitution, statute, common law, regulation, ordinance, order, and/or contract.

    1.9    Each Employee agrees not to become a party to a lawsuit on the basis of any claim of any type whatsoever arising out of or relating to the allegations in the Action that arose prior to the parties' execution of this Settlement Agreement. Each Employee further agrees that they will not voluntarily assist, or provide any information to, any other person concerning an

-14-

actual or potential claim against Ingenious Med or its affiliates or cooperate in any proceeding against or concerning Ingenious Med or its affiliates, except that each Employee may cooperate with governmental entities to the extent that such entities initiate any proceeding and contact the Employee concerning such investigation or may comply with any lawfully issued subpoena by a court of competent jurisdiction. Nothing in this Settlement Agreement shall preclude either Employee from cooperating with any investigation of allegedly illegal employment practices by any government agency charged with enforcement of laws pertaining to the regulation of the workplace. The Employees, however, are prohibited by this Settlement Agreement from recovering damages, money, or any other compensation in any case filed by any of them with, or brought by, any government agency on their behalf incurred as of the date of this Agreement.

  1.10 Employees covenant and acknowledge that neither they, nor any person, organization or other entity acting on their behalf, has or will sue or cause or permit suit against Ingenious Med upon any claim released herein or to participate in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon or otherwise enforce or accept any judgment, decision, award, warranty or attachment upon any claim released herein. In the event of any claim by an agency or federal or state government or a claim by any person against Ingenious Med for conduct by Ingenious Med against either of the Employees for any conduct arising prior to the effective date of this Settlement Agreement, Employees waive their right to personally recover any monetary amount in any such proceedings, and each Employee covenants to immediately return to Ingenious Med any amounts paid to such Employee pursuant to any such proceedings. The Employees represent that there are no additional administrative charges, lawsuits, civil actions or claims of any kind asserted by them that are pending against Ingenious Med.

  1.11 Employees are not relying on any information provided by Ingenious Med concerning the tax consequences of payments made under this Agreement. Employees agree to

-15-

indemnify and hold Ingenious Med harmless of and from any claims of Employees or third parties,
including, without limitation, governmental taxing authorities, for income taxes, FICA, or any other
taxes of any kind relating to taxes owed by the Employees on the payments made by Ingenious Med
under this Agreement.

## 2.  Representations And Warranties

2.1    Ingenious Med represents and warrants that the person executing this Settlement
Agreement, the Stipulation of Dismissal, and the Joint Motion has full authority to do so, and
said documents are or upon being executed, will be enforceable against Ingenious Med.

2.2    Ms. Chappell represents and warrants that (i) the person(s) executing this
Settlement Agreement, the Chappell Release, the Joint Motion, and the Stipulation of Dismissal
have full authority to do so, and said documents are or upon being executed will be enforceable
against Ms. Chappell; (ii) Ms. Chappell has not, and as of the execution of the Chappell Release
will not have, sold, assigned, granted, or transferred to any individual or entity any of the claims
that are released by the Chappell Release; (iii) there are no liens upon the Chappell Settlement
Payment, except for any possible liens for attorneys' fees and expert fees for services in
connection with the Action, which will be satisfied by Ms. Chappell; (iv) if any person or entity
commences a court, administrative, or any other type of action against Ingenious Med for any
claims arising out of any alleged liens concerning the Chappell Settlement Payment, including
health care liens, or any other claims arising out of said injury or suit, Ms. Chappell will hold
harmless, defend, and indemnify Ingenious Med from all such claims; (v) Ms. Chappell's duty to
indemnify includes the duty to pay all reasonable costs and reasonable attorney's fees incurred in
defending against any such claims and is in addition to, and not in lieu of, any other remedies
Ingenious Med may have for breach of this warranty; (vi) other than the Action, she has filed no
other complaints, charges, or any other document with any state, federal, or local government

-16-

agency or courts, or private adjudication body concerning her employment at Ingenious Med;

(vii) that, other than the claims and allegations in the Action, she has no knowledge of other

potential claims that she may have against, or alleged violations of law by, Ingenious Med; and

(viii) that her current attorneys are, and have been, the sole attorneys for her with respect to the

Action and all claims set forth therein, that no other attorney or law firm has any claim for legal

fees, costs and/or expenses relating to the Action, and that the amounts paid by Ingenious Med

under the Agreement are intended to include all legal fees, costs and/or expenses for which

Ingenious Med could be liable in connection with the Action. Any material inaccuracy that Ms.

Chappell knew, or should have known, in making any of the Chappell Representations shall

constitute a material breach of this Settlement Agreement.

     2.3     Mr. Legg represents and warrants that (i) the person(s) executing this Settlement

Agreement, the Legg Release, the Joint Motion, and the Stipulation of Dismissal have full

authority to do so, and said documents are or upon being executed will be enforceable against

Mr. Legg; (ii) Mr. Legg has not, and as of the execution of the Legg Release will not have, sold,

assigned, granted, or transferred to any individual or entity any of the claims that are released by

the Legg Release; (iii) there are no liens upon the Legg Settlement Payment, except for any

possible liens for attorneys' fees and expert fees for services in connection with the Action,

which will be satisfied by Mr. Legg; (iv) if any person or entity commences a court,

administrative, or any other type of action against Ingenious Med for any claims arising out of

any alleged liens concerning the Legg Settlement Payment, including health care liens, or any

other claims arising out of said injury or suit, Mr. Legg will hold harmless, defend, and

indemnify Ingenious Med from all such claims; (v) Mr. Legg's duty to indemnify includes the

duty to pay all reasonable costs and reasonable attorney's fees incurred in defending against any

such claims and is in addition to, and not in lieu of, any other remedies Ingenious Med may have for breach of this warranty; (vi) other than the Action, he has filed no other complaints, charges, or any other document with any state, federal, or local government agency or courts, or private adjudication body concerning his employment at Ingenious Med; (vii) that, other than the claims and allegations in the Action,  he has no knowledge of other potential claims that he may have against, or alleged violations of law by, Ingenious Med; and (viii) that his current attorneys are, and have been, the sole attorneys for him with respect to the Action and all claims set forth therein, that no other attorney or law firm has any claim for legal fees, costs and/or expenses relating to the Action, and that the amounts paid by Ingenious Med under the Agreement are intended to include all legal fees, costs and/or expenses for which Ingenious Med could be liable in connection with the Action.  Any material inaccuracy that Mr. Legg knew, or should have known in making any of the Legg Representations shall constitute a material breach of this Settlement Agreement.

2.4     Each Employee acknowledges and agrees that their acceptance of the terms of this Settlement Agreement constitutes adequate consideration for the Releases attached to this Settlement Agreement as Exhibits A and B (collectively, the "Releases").  This means that by signing this Settlement Agreement, each Employee and all others claiming by, through, or under them will, subject to and in accordance with the Releases, have knowingly and voluntarily waived certain rights (including, without limitation, rights under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*)) that existed as of the date that this Settlement Agreement was signed by the Parties.

2.5     The parties agree that any breach of this Settlement Agreement by any party will cause irreparable damage to the other parties and that in the event of such breach, the non-

breaching parties shall have, in addition to any and all remedies available at law, the right to an injunction and/or restraining order, specific performance, or any other equitable relief to prevent the violation of the non-breaching parties' rights hereunder.

### 3. Non-Disparagement

3.1     Each Employee expressly agrees that, regarding the claims at issue in, or relating to, the Action, they shall not disparage or in any manner attempt to harm and/or injure the reputation of Ingenious Med, its affiliates, officers, directors, shareholder, investors, agents, attorneys, and/or insurers, sureties, guarantors, agents, representatives, affiliates, partners, employees, heirs, administrators, executors, trustees, attorneys, predecessors, and successors and assigns.

3.2     Ingenious Med expressly agrees that, regarding the claims at issue in, or relating to, the Action, while such individuals are employed by Ingenious Med, David Lamm, Jane King, and Samantha Gates shall not disparage or in any manner attempt to harm and/or injure the reputation of either Employee.  Ingenious Med further agrees that in the event that any prospective employer requests information regarding either of the Employees' employment after such Employee's employment with Ingenious Med has been terminated, Ingenious Med will respond by providing only dates of employment and salary and nothing about the facts or circumstances of the Action will be considered by Ingenious Med in providing either of the references.

### 4. Miscellaneous

4.1     It is expressly understood by the Parties that neither this Settlement Agreement nor any of the negotiations, transactions, or proceedings connected in any way with this Settlement Agreement shall be construed or deemed to be evidence of any liability, any wrong-

-19-

doing, or an admission on the part of any of the Parties or their representatives or those individuals and entities released in the Releases, whether or not alleged in the correspondence between the Parties and/or their respective counsel with regard to the Action.  Nor shall any non-public negotiations, transactions, or proceedings connected in any way with this Settlement Agreement or with any claim or dispute among the Parties be offered or received in evidence in any proceeding to prove any liability, or any wrong-doing, or an admission on the part of any Party, or any of the individuals or entities released in the Releases, or for any other purpose; provided, however, that nothing herein shall prevent this Settlement Agreement, the Releases, or any of the terms of the foregoing documents from being used, offered or received in evidence in any proceeding to enforce any or all of the terms of this Settlement Agreement or the Releases.

      4.2    This Settlement Agreement is made under seal in the State of Georgia and shall be governed by, and construed as a fully integrated contract in accordance with, Georgia law (without giving effect to the principles of its, or any other states', conflicts of law doctrines). The Courts of the State of Georgia, or the United States District Court sitting therein, shall have exclusive jurisdiction and venue over any disputes that may arise concerning this Settlement Agreement.

      4.3    If any provision of this Settlement Agreement is in conflict with any statute or rule of law of the State of Georgia or any federal law (including, without limitation, the FLSA) or is otherwise unenforceable, such provision shall be deemed to be null and void only to the extent of such conflict or unenforceability, and shall be deemed separate from, and shall not invalidate, any other provision of this Settlement Agreement.  To the extent that a court or judicial body of competent jurisdiction determines that any material provision of this Settlement Agreement is invalid as to either Employee, such Employee shall, within thirty calendar days of

00816486.11

such determination, return to Ingenious Med all portions of the Chappell Settlement Payment or the Legg Settlement Payment that such Employee received in accordance with this Settlement Agreement.

4.4     Each Party has cooperated in the preparation and drafting of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the rule of contra proferentem shall not apply.

4.5     Each Employee has been advised by Ingenious Med to consult with an attorney of the applicable Employee's choice before signing this Settlement Agreement.  Each Employee and Ingenious Med further state that they have carefully read this Settlement Agreement and that they have had the opportunity to carefully review the same with their respective attorneys. Each Employee expressly acknowledges that they have discussed with their attorney the scope of the applicable attached Releases, and understand the rights that they are relinquishing under, among other statutes, the FLSA.

4.6     All Parties agree that the terms of this Settlement Agreement are satisfactory to, and thoroughly understood by, them and the signing of this Settlement Agreement is voluntary, knowing and of their free act and deed.  Each Employee states that no representation, promise, and/or inducement has been offered or made to induce them to enter into this Settlement Agreement, and they are competent to execute this Settlement Agreement.  Each Employee further acknowledges that they have not relied on any statement and/or representation, verbal or physical, of any other party in executing this Settlement Agreement, except as expressly stated in this Settlement Agreement.

4.7     This Settlement Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed an original and all of such counterparts, taken together,

-21-

shall constitute one and the same Settlement Agreement, even though all of the Parties hereto may not have executed the same counterpart of this Settlement Agreement.  An executed copy of this Settlement Agreement or a copy with a pdf signature shall be treated as an original for all purposes.

4.8     Each Party to this Settlement Agreement has made such investigation of the facts pertaining to this Settlement Agreement and all other related matters as it has deemed necessary.

4.9     The Parties will execute all additional documents and take such additional actions as shall be reasonable and necessary to carry out the provisions of this Settlement Agreement.

4.10    Should either Party breach the terms of this Settlement Agreement, the other Party shall have the right to seek specific performance of the Settlement Agreement.

4.11    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, heirs and assigns.

4.12    Should any person not a party to this Settlement Agreement challenge the validity of the terms of this Settlement Agreement or of the Releases, the Parties shall provide one another with such cooperation or assistance as may be reasonably requested.

4.13    This Settlement Agreement, along with the exhibits executed and exchanged in connection with this Settlement Agreement, contains the entire agreement between the Parties and supersedes any prior or contemporaneous written, oral or other agreement of any type between the Parties concerning the subject matter contained herein.  This Settlement Agreement is intended as a fully integrated final expression of the agreement between the Parties and is a complete statement of the terms therein.  This Settlement Agreement may not be modified or amended except in a writing signed by all Parties.

-22-

IN WITNESS WHEREOF, the parties have executed this Agreement under seal.

Signed this 31st day of August, 2018.

SUNNIE CHAPPELL

_____        Date: _9/4/2018_____

BRIAN LEGG

_____        Date: _____

INGENIOUS MED, INC.

By: _____        Date: _____
Name:  David Lamm
Title:   Chief Financial Officer

-23-

00816486.11

IN WITNESS WHEREOF, the parties have executed this Agreement under seal.

Signed this 31st day of August, 2018.

**SUNNIE CHAPPELL**

_____     Date: _____

**BRIAN LEGG**

*Brian Legg*                          Date: 8/31/18

**INGENIOUS MED, INC.**

By:_____    Date: _____
Name: David Lamm
Title:  Chief Financial Officer

00816486.11

IN WITNESS WHEREOF, the parties have executed this Agreement under seal.

Signed this 31st day of August, 2018.

**SUNNIE CHAPPELL**

_____     Date: _____

**BRIAN LEGG**

_____     Date: _____

**INGENIOUS MED, INC.**

By: _____     Date: 9/4/18
Name: David Lanim
Title:   Chief Financial Officer

00816486 11

**EXHIBIT A**
**(The Chappell Release)**

## THE CHAPPELL RELEASE

By signing in the space provided below, **SUNNIE CHAPPELL**, for herself and her principals, agents, representatives, affiliates, partners, employees, insurers, sureties, guarantors, heirs, administrators, executors, trustees, attorneys, predecessors, successors and assigns, and all others claiming by, through, or under any or all of them, hereby remises, releases, and forever discharges **INGENIOUS MED, INC.** and all of its principals, agents, insurers, sureties, guarantors, representatives, subdivisions, parents, subsidiaries, affiliates, partners, members, employees, managers, officers, directors, shareholders, heirs, administrators, executors, trustees, attorneys, predecessors, and successors and assigns (collectively, "Ingenious Med") from any and all claims, counterclaims, cross-claims, third-party claims, actions, causes of action, suits, rights, covenants, liens, sanctions, accounts, debts, obligations, damages, liabilities, demands, contracts, leases, agreements, guarantees, wages, salary, overtime pay, liquidated damages, benefits, appeals, costs, attorneys' fees and expenses of every name and nature whatsoever, at law or in equity, under any federal, state, or local law, that Ms. Chappell ever had, now has, or hereafter can, shall, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever, whether known, unknown, or unknowable, from the beginning of the world through (and including) the date of this Release that were, or could have been included in the action that Ms. Chappell filed against Ingenious Med, pending in United States District Court Northern District of Georgia Atlanta Division and captioned <u>Sunnie Chappell v. Ingenious Med, Inc.</u>, Civil Action No. 1:17-cv-02444-TWT, under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*), under any corresponding state or local law, or under any wage and hour law of every name and nature whatsoever and Ms. Chappell agrees not to prosecute any such claims against Ingenious Med.  This Release and waiver of claims specifically extends to any wage and hour claims

arising out of Ms. Chappell's employment with Ingenious Med, including, but not limited to, tort and/or contract claims, including claims for notice, pay in lieu of notice, severance pay, bonus, overtime pay, incentive compensation, interest, sick pay, and/or vacation pay. Ms. Chappell specifically releases and waives any claim or right to assert that any cause of action or alleged cause of action or claim or demand has been, through oversight or error or intentionally or unintentionally, omitted from this Release. Notwithstanding the foregoing, the Parties agree that, in signing this Agreement, Chappell is not releasing any claims arising under Georgia or federal law for which the law prohibits a release.

Ms. Chappell understands that she is releasing Ingenious Med from claims that she may not know about. That is her **knowing and voluntary intent**, even though she recognizes that someday she might learn that some or all of the facts she currently believes to be true are untrue and even though she might then regret having signed this Release. Nevertheless, Ms. Chappell is assuming that risk and agrees that this Release shall remain effective in all respects in any such case. Ms. Chappell expressly waives all rights she might have under any law that is intended to protect her from waiving unknown claims that exist as of the date of this Release and Ms. Chappell understands the significance of doing so.

**SUNNIE CHAPPELL**

DATE: 9/4/2018

**EXHIBIT B**
**(The Legg Release)**

## THE LEGG RELEASE

By signing in the space provided below, **BRIAN LEGG**, for himself and his principals, agents, representatives, affiliates, partners, employees, insurers, sureties, guarantors, heirs, administrators, executors, trustees, attorneys, predecessors, successors and assigns, and all others claiming by, through, or under any or all of them, hereby remises, releases, and forever discharges **INGENIOUS MED, INC.** and all of its principals, agents, insurers, sureties, guarantors, representatives, subdivisions, parents, subsidiaries, affiliates, partners, members, employees, managers, officers, directors, shareholders, heirs, administrators, executors, trustees, attorneys, predecessors, and successors and assigns (collectively, "Ingenious Med") from any and all claims, counterclaims, cross-claims, third-party claims, actions, causes of action, suits, rights, covenants, liens, sanctions, accounts, debts, obligations, damages, liabilities, demands, contracts, leases, agreements, guarantees, wages, salary, overtime pay, liquidated damages, benefits, appeals, costs, attorneys' fees and expenses of every name and nature whatsoever, at law or in equity, under any federal, state, or local law, that Mr. Legg ever had, now has, or hereafter can, shall, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever, whether known, unknown, or unknowable, from the beginning of the world through (and including) the date of this Release that were, or could have been included in the action that Mr. Legg filed against Ingenious Med, pending in United States District Court Northern District of Georgia Atlanta Division and captioned <u>Sunnie Chappell v. Ingenious Med, Inc.</u>, Civil Action No. 1:17-cv-02444-TWT, under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*), under any corresponding state or local law, or under any wage and hour law of every name and nature whatsoever and Mr. Legg agrees not to prosecute any such claims against Ingenious Med.  This Release and waiver of claims specifically extends to any wage and hour claims arising out of Mr.

Legg's employment with Ingenious Med, including, but not limited to, tort and/or contract claims, including claims for notice, pay in lieu of notice, severance pay, liquidated damages, bonus, overtime pay, incentive compensation, interest, sick pay, and/or vacation pay. Mr. Legg specifically releases and waives any claim or right to assert that any cause of action or alleged cause of action or claim or demand has been, through oversight or error or intentionally or unintentionally, omitted from this Release. Notwithstanding the foregoing, the Parties agree that, in signing this Agreement, Legg is not releasing any claims arising under Georgia or federal law for which the law prohibits a release.

Mr. Legg understands that he is releasing Ingenious Med from claims that he may not know about. That is his **knowing and voluntary intent**, even though he recognizes that someday he might learn that some or all of the facts he currently believes to be true are untrue and even though he might then regret having signed this Release. Nevertheless, Mr. Legg is assuming that risk and agrees that this Release shall remain effective in all respects in any such case. Mr. Legg expressly waives all rights she might have under any law that is intended to protect him from waiving unknown claims that exist as of the date of the execution of this release, and Mr. Legg understands the significance of doing so.

**BRIAN LEGG**

*Brian Legg*                    DATE: 8/31/18

00816486.11